**UNITED STATES of America and T. S. Youngblood, Special Agent, Internal Revenue Service, Petitioners,**

v.

**Landon K. FENDER, Respondent.**

**Misc. No. 115.**

United States District Court,
W. D. North Carolina,
Asheville Division.

Feb. 19, 1971.

Keith S. Snyder, U. S. Atty., Asheville, N. C., for petitioners.

J. M. Baley, Jr., Asheville, N. C., Jack W. Westall, Jr., Asheville, N. C., for respondent.

## MEMORANDUM AND ORDER

WOODROW WILSON JONES, Chief Judge.

This matter is here pursuant to an order of this court issued under the provisions of 26 U.S.C.A. § 7604, directing the Respondent to show cause why he should not obey and comply with a summons issued by the Internal Revenue Service under 26 U.S.C.A. § 7602. The Respondent filed written answer and the matter was heard by the court on February 16, 1971. Upon careful consideration of the record, the testimony, and argument of counsel, the court now enters its findings and conclusions.

### Findings of Fact

The Internal Revenue Service is conducting an examination of the tax returns of Harry P. Clay and his wife, Marjorie Clay, for the years of 1965 through 1969. The investigation is being conducted by the Audit Division as well as the Intelligence Division of the Revenue Service. It is common knowledge and the evidence shows that the Intelligence Division of the Revenue Service enforces the criminal statutes affecting income taxes and develops information concerning alleged criminal violations. The evidence discloses that this investigation is to determine the correct tax liability of the taxpayers, Harry P. Clay and Marjorie Clay, for the years of 1965 through 1969, and to ascertain whether criminal prosecution should be recommended. No criminal prosecution has been recommended or instituted at this time.

On September 22, 1970, as part of the investigation, the Internal Revenue Service, through its Special Agent, Truman S. Youngblood, issued a summons directing the Respondent to appear before said Agent to testify and to produce all records in his possession in connection with the construction of a house for Harry P. Clay and Marjorie Clay. The Respondent failed to appear in person or to produce any records, but instead filed through an attorney a Motion to Quash the Summons on the following grounds: (1) that the summons was issued for the purpose of obtaining evidence for a possible criminal prosecution which is not a lawful purpose, and would require the Respondent to produce records and to give testimony which might incriminate him and he therefore invokes the protection of the Fifth Amendment; and (2) that he has been suffering from a nervous condition or illness which rendered him physically, mentally, and emotionally unable to undergo any questioning or examination which would upset him.

The Internal Revenue Service petitioned this court court on January 19, 1971, for an order to enforce the summons under 26 U.S.C.A. § 7604, alleging that the Respondent is in possession of information pertaining to the construction of a home for Harry P. Clay, and that this information is necessary for the purpose of ascertaining the correct tax liability of Clay and his wife. It is further alleged that Fender obtained this information while acting as foreman in charge of construction of the house, and that he has failed and refused to respond to the summons heretofore issued. This court entered an order directing Fender to show cause why he should not obey and comply with the summons to testify and to produce the information in his possession relative to the construction of said house. The Respondent filed answer on February 8, 1971, admitting that the summons was issued; that it was served upon him; that he did not appear, testify, or produce any records; that he was an employee of Harry P. Clay and assisted in the construction of a house for Clay. He alleges anew the defenses set forth in his Motion to Quash the Summons and adds thereto an additional defense to the effect that the summons would violate his Fourth Amendment rights against unlawful search and seizure. He prays that the Petition for Enforcement be dismissed, and that "the Internal Revenue Service be restrained from interviewing your Respondent, corresponding with him, or in any other manner harassing him in connection with this proceeding."

The court finds that the Respondent was employed by Harry P. Clay as foreman in charge of construction of a new home during the period under investigation by the Internal Revenue Service and that as a result of such employment he would possess certain knowledge and information relevant and pertinent to such investigation.

The court further finds that the summons required the Respondent to appear on October 2, 1970 "before Truman S. Youngblood, an officer of the Internal Revenue Service, to give testimony and all records pertaining to the home of Harry P. Clay for which you acted as foreman", and that the Respondent did not appear to testify or to produce such records.

The only mention of the Respondent's "physical, mental or emotional" health during the hearing was a reference to a letter from a doctor at a Veterans Administration Hospital that he had been confined to the hospital prior to September 20, 1970, suffering from a nervous condition or illness. No evidence was offered at the hearing as to his condition on October 2, 1970, the date he was summoned to appear or on February 16, 1971, the date of this hearing.

### Conclusions of Law

The court has jurisdiction of this matter under the provisions of 26 U.S.C.A. § 7604(a). The Internal Revenue Service has the power and authority under 26 U.S.C.A. § 7602 to issue a summons directing the Respondent to appear to testify and produce records in his possession in connection with the investigation of the tax liability of Harry P. Clay and Marjorie Clay. The court concludes that said summons was issued in aid of an investigation in good faith and prior to a recommendation for criminal prosecution, and that said summons is therefore valid.

In Donaldson v. United States, 400 U. S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580, 1971, the Supreme Court said:

"Congress clearly has authorized the use of the summons in investigating what may prove to be criminal conduct. The regulations are positive. Treas.Regs. § 301.7602–1(c) (4). The underlying statutes are just as authoritative. Section 6659(a) (2) of the Code defines the term 'tax', as used in the Code and, hence, in the authorizing § 7602, to include any addition or penalty. Section 7602 contains no restriction; further, it has its ascertainable roots in the 1939 Code's § 3614 and, also, § 3615(a)–(c), which,

by its very language and by its proximity to § 3616 and § 3654, appears to authorize the use of the summons for investigation into criminal conduct. There is no statutory suggestion for any meaningful line of distinction, for civil as compared with criminal purposes, at the point of a special agent's appearance. See Mathis v. United States, 391 U.S. 1, 4, 88 S.Ct. 1503, 1504, 20 L.Ed.2d 381 (1968). To draw a line where a special agent appears would require the Service, in a situation of suspected but undetermined fraud, to forgo either the use of the summons or the potentiality of an ultimate recommendation for prosecution. We refuse to draw that line and thus to stultify enforcement of federal law. See United States v. Kordel, 397 U.S. 1, 11, 90 S.Ct. 763, 769, 25 L.Ed.2d 1 (1970)."

■ The contention that the summons violates the Respondent's Fourth Amendment rights against unreasonable searches and seizures is without merit. In *Donaldson*, the taxpayer attempted to intervene in an action for enforcement of an Internal Revenue summons directed to a third party, and the court in discussing the Fourth Amendment question, said:

"Despite the contrary intimations in the motions to intervene, there is now no constitutional issue in the case. The taxpayer on oral argument so conceded. In any event, that question appears to have been settled long ago when the Court upheld, against Fourth Amendment challenge, an internal revenue summons issued under the Revenue Act of 1921 and directed to a third-party bank. First Nat. Bank of Mobile, Ala. v. United States, 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796 (1925), affirming 295 F. 142, 143 (SDAla.1924). See also United States v. First Nat. Bank of Pikeville, 274 F.Supp. 283, 284 (EDKy.1967), aff'd, Justice v. United States, 390 U.S. 199, 88 S.Ct. 901, 19 L.Ed.2d 1038, and United States v. Shlom, 420 F.2d 263, 266 (CA 2 1969), cert. denied, 397 U.

S. 1074, 90 S.Ct. 1521, 25 L.Ed.2d 809."

The court holds that the summons, and a full compliance with its directive, will not constitute an unreasonable search and seizure in violation of the Fourth Amendment.

■ The Respondent invokes the protection of the Fifth Amendment, strenuously contending that the production of any information or documents demanded in the summons would tend to incriminate him. There is not a scintilla of evidence in the record to indicate that the information and documents sought here could or would incriminate the Respondent. The Government stipulated at the hearing that it sought only information and documents relative to the cost of the house, including the names and addresses of materialmen, sub-contractors, and other workmen, the amount and method of payment to each, and other similar items in connection with the construction of said house. The Government further stipulated that it did not desire and would not be entitled to any information or documents pertaining to the personal finances of the Respondent. On the basis of the record, the court holds that the production of the information and documents demanded in the summons would not violate the Respondent's Fifth Amendment rights. However, in an effort to safeguard Respondent's constitutional rights, the court will make an in camera inspection of any and all documents in the possession of the Respondent relative to the construction of the house in question before the same are produced if the Respondent so desires.

■ The burden is on the Respondent to prove that he is physically, mentally, and emotionally unable to answer the questions of the Revenue Officer or produce the documents in his possession. He has failed to carry this burden, and the court concludes that this contention is without merit.

The court concludes that the summons involved here is valid and is rea-

sonable in scope and was issued for a purpose proper under 26 U.S.C.A. § 7602. The information and documents demanded are relevant and material to the tax inquiry of Harry P. Clay and Marjorie Clay. Therefore, the court is of the opinion that enforcement should be granted.

It is, therefore, ordered, adjudged and decreed that the Respondent, Landon K. Fender, appear before Special Agent, Truman S. Youngblood, at the Plateau Building, 50 South French Broad Avenue, Asheville, North Carolina, on March 9, 1971, at 9:00 A. M., to testify with respect to and produce all records pertaining to the construction of the home of Harry P. Clay and Marjorie Clay.

It is further ordered that the Respondent shall not be required to testify with respect to or produce any of his personal financial records.

In the event the Respondent or his attorney feel that the production of any documents or records in connection with the construction of said house may violate his privilege against self-incrimination guaranteed by the Fifth Amendment, said documents may be produced to the court for an in camera inspection prior to March 9, 1971.